Let's hear from Mr. Bollins. Good morning. First of all, I confess that I was the culprit in that, and if nothing else, my liver was happy with the rule. I would also, if it pleases the court, like to save a few minutes for rebuttal. How many? Three or four? Three minutes. Three minutes. Three minutes for rebuttal, granted. I feel like I'm being attacked. I think the threshold question is whether the loss that USA Container seeks coverage for even falls within the coverage of the standard comprehensive general liability. I'm trying to understand this. You filed a motion to withdraw the occurrence issue. Yes. Is that before us or not before us? It's not before you, but the occurrence issue is an issue that's different from whether or not the policy is designed to provide coverage for this type of risk. That's squarely within the concept of occurrence. We've got definitions in this policy of both occurrence and property damage, and under Cypress Point, that's where we look. You're talking about intended to cover. The intent is drawn from the definitions. How does the occurrence, i.e. an accident as defined here, not include what happened here? Oops, it really was an accident that somebody burned the syrup. Well, in reaching its conclusion in Cypress Point, the court made clear the distinction between making a claim for faulty workmanship versus making a claim for damage to property as a result. That just means the widow doctrine is still intact. Correct. Cypress Point didn't overrule a widow, and it could have, right? Absolutely. But doesn't that get us into the exclusion realm? I thought J-6 was your strongest argument. Well, we have J-6, and I believe that J-6 does, in fact, preclude coverage here. Why? Well, because J-6 precludes, and I'll read it to the court. Physical injury to tangible property, including all resulting loss of use of that property, all such loss of use shall be deemed to occur at the time of the physical injury that caused it. So they were performing the work. In their complaint, USA Container acknowledges that the damage occurred because its subcontractor failed to follow the SOPs. It was a standard breach of a contract, and the CGL policy is not designed to cover the breach of contract. Now, here's what I want you to focus on. I want you to tell me what language in the policy indicates there is no coverage here. Or, instead, is your argument based upon an exclusion? Because if you've conceded the occurrence issue, which I thought you had, then it seems to me you have to be talking about an exclusion. Well, with all due respect, Your Honor, I think we can point to both. J-6, which the court's familiar with, obviously. You didn't read J-6. J-6 says that particular part of any property must be restored, repaired, or replaced because your work was incorrectly performed on it. We don't have a repair, restore, or replacement here. We have a sale of these damaged goods at a loss. Correct? Isn't that what happened? Well, I think that the claim against USA Container was for the entire amount. What happened here? Was there a repairing or a replacement or a restoration here? As a matter of fact? As a matter of fact, Judge, I'm not sure what they did with it. It was never part of it. Really? Yes, it was never part of the case. I thought it was a matter of fact that the goods were sold at a loss. Some of them, part of it may have been, but that was not what we were focusing on in the case. All right, but if it were one of the molasses, they had to replace it because the ones that were sent were nonconforming. Correct. And so that was where Exclusion N comes in. But to get back to your question, Your Honor. Yes. In Cypress Point, they make a point, not to be redundant, of going through cases that distinguish between damage claimed as a result of faulty work in order to repair the faulty work versus damage caused by the faulty work,  But I read Cypress Point to be saying, well, let's focus on the language of the policy, and they come up with a definition of occurrence, so Cypress Point moves us forward in terms of the jurisprudence by defining what an occurrence is, and it seems to me you've conceded an occurrence. Are you saying there's not property damage as defined under the policy here? Well, yes, but I think it goes further than that, Judge, and I think that the court in Cypress Point made that distinction quite clear. But as an exclusion, though, to Judge VanAskey's point, I'm going to read from Cypress Point. It says that business risk is considered, quote, by operation of the CGL's business risk exclusions. It's quite explicit about that. But they also cite to the Appellate Division decision in Fireman's Fund favorably, and they quote this language. While WIDO addressed business risk, in quotes, the WIDO principle has been extended to the threshold issue of whether the risk was within the scope of the standard insuring clause. In other words, was the policy designed to cover this type of risk? Well, when WIDO was decided, the standard CGL didn't cover it, but that was in the 70s and the standard language was changed in 86, was it not? It was only changed with respect to the addition of the subcontractor exception to the UR work exclusion. That does not create coverage.  The policy here contains a UR work exception, does it not? Yes. And by virtue, and under Cypress Point, they point out that the fact that there is a UR work exclusion with a subcontractor exception, the fact that that is included shows that they had to exclude that because otherwise it would have been included in the coverage. Isn't that correct? Absolutely. Well, I think that's a problem for you. Now, you say that Fireman's was cited approvingly. I look at the next part of the opinion, and they cite U.S. Fire and French versus Assurance, which really pertain to the issue exactly before us, not the consequential damages, but that issue. And then say, the court says, although the holdings in U.S. Fire and French are not controlling here, they're informative because they represent a strong, recent trend in the case law of most federal circuit and state courts interpreting the term occurrence to encompass unanticipated damage to non-defective property resulting from poor workmanship. So aren't they signaling that this concept of occurrence includes faulty workmanship? Respectfully, Your Honor, I think that the language you just read makes clear that what they're talking about is the distinction between damage just to the contractor's work versus damage to court. They are, but they're saying damage to the contractor's work, and there are whole string cites after that. Then they go on to look at the consequential damages afterwards, which is really at issue. But this is at least strong dicta, is it not? It is, Your Honor, but I don't think your interpretation of it, most respectfully, is correct. Because they cite French, and most of the discussion is the – What is it in Cypress Point that says to us that what happened here should not be considered to be an occurrence? Because what happened here was damage only to the contractor's work. But I'm saying what in Cypress Point says that that is not an occurrence? I can't find language in here that tells me that that should not be deemed part of the occurrence. As Judge Finasci said, we look at the contract language. But that wasn't the issue before that court. They read into their holding and what was before them by making the distinction between damage to the contractor's own work and damage caused by the contractor's own work. And French is to that point. Fireman's Fund is to that point. And the other case is Atlantic Mutual. They all deal with circumstances. And that would make sense. But then you run into the problem that the exception to the work is that narrows the exclusion by expressly declaring that it does not apply if the damaged work or the work out of which the damage arises or the damaged work was performed on your behalf by a subcontractor. So that seems to lead us back to coverage. But once again, Judge, it is in circumstances where the work by either the insured or the subcontractor causes damage to undamaged work of others. And Cypress Point makes that very clear. And all of the cases that we cited originally and to the district court stand for that proposition. Titanium Industries, which was just decided last summer, Atlantic Mutual Bottle, Fireman's Fund, which they cite too favorably, all stand for the proposition that damage to the insured's own work caused by the insured's faulty workmanship is not within. The insured here didn't cause it. It was the subcontractor who caused it. But it's still damage to that work. And, well, I think Cypress Point is very clear that there's a distinction between damage to your own work, which is not within the coverage of a CGL policy, and damage caused by your work, which is indeed an occurrence covered by the policy. I mean, it's the same thing. I'm sorry to say this, but I thought we were beyond occurrence, though. You conceded occurrence. You withdrew the issue from the appeal. I understand what you're saying, Judge, but I think there's a distinction. I mean, maybe you could tell us. I mean, I think we know. You withdrew that issue before Cypress Point was decided, correct? Yes, Your Honor. And that's because you were concerned of what Cypress Point might say on that, right? Not really, Judge. And what was their reason? Without going into details, I was directed to do that. Okay, all right. Well, I don't want you to betray any. So your thrust has to be one of the two exceptions, or exclusions. Well, yes. Well, I think J6 clearly excludes it. But I do think that, most respectfully, the interpretation you're giving to Cypress Point really truncates what that case stands for. Okay. All right. We'll hear you on rebuttal. Thank you, Your Honor. Thank you, Mr. Bowers. Mr. Rowland? Good morning. Stephen R. Rowland, Bound, Moss, Glitzen, Callum for Appleby USA Container Co., Inc. May it please the Court. We're here after this Court, at the initial argument in June of 2015, determined that the issue of state law regarding occurrence was unclear enough in its mind that it wanted to have guidance from the New Jersey Supreme Court. Right, and the Court didn't answer the question, but it issued an opinion in Cypress Point. And Cypress Point doesn't really answer the question, right? It didn't overrule WIDO, correct? It said that WIDO is a different policy and different kinds of exclusions. What it did say about WIDO, which is critical, is that WIDO never addresses what is the insuring clause. The occurrence, you mean? The occurrence, right. So you agree with my understanding that WIDO, to the extent there is still a business risk exclusion in New Jersey, but it's not an occurrence issue on the front end. It's a question of does the exclusion apply? No, I actually don't agree that there's anything like an amorphous business risk exclusion. I think what they've done in Cypress Point is simply say we're going to look at these policies and we're going to look at them in a disciplined manner. The first thing we're going to do is we're going to look at the insuring agreement. Is there property damage here? Yes. What is found below that's not appealed? Is there an occurrence? Yes. As the Court correctly points out, that's really conceded. So we are now into whether or not having that broad grant and initial coverage is there. We're now into whether or not an exclusion is proffered by the insurer to limit that broad grant. Right, and why doesn't J6 apply? Because here the molasses, because of their defective condition, they had to be restored, repaired, or replaced. And it doesn't apply because the language of it requires that the damaged corn syrup must be one of the three things, restored, repaired, or replaced. And none of those things happened here. Is that a matter of record? Your opponent seems to not know what happened here and to whom was it sold, for how much? The record on this is very clear and it's undisputed, which is that Mayo Uni was able to, through its own diligence, through its diligent efforts, to resell the corn syrup and it was sold for less than the contract prices. It had to be a lot less. It was sold for a dollar if the damages were $780,000. Well, it was a lot. I guess we don't know the contract price. In the record, there is actually a portion of the record saying that initially, I think the amount that these were to be sold for was about a million and a half dollars, and they were able to find other purchasers after the corn syrup was damaged and sell it for considerably less, but they were able to sell it. Do you want us to read J6, then, based upon the behavior of the party that damaged the goods? Your answer to my question of did this not have to be restored, repaired, or replaced, I think, correct me if I'm wrong, that's not what happened. Right. The inverse of that is if they had replaced the corn syrup, then exclusion J6 applies, right? Again, what they did is – I'm not asking what they did. I'm saying if they – I'm giving you a hypothetical. So by definition, this didn't happen. If they had, instead of covering at a loss, selling it for what they could, and if they had replaced it with the conforming corn syrup, then J6 would apply. The language is the language, and it must be that they – it's a mandatory thing, which is they have to act in that way. Well, but based on who? They have to. Has to by what? By court order? By – obliged by contracts? That has to be the only way that they can do it. What way? Court order? Contract? Obligation? Because your test, as I understand it, is you're asking us to look at what actually happened, not whether it must have been replaced or should have been replaced. You're saying look at the true facts. The true facts of this case are it was not actually replaced, and what I'm challenging you on is I'm having trouble seeing how we could interpret J6 to be a fungible exclusion based upon the post hoc behavior of the party. You understand my concern? I do, and I guess the way I would address that concern, which is the language is the language, but we also had this FIRO case that came down that we alerted the court to where, like our case, you have a food product, which is these chickens, and these chickens, instead of being big chickens, they were little chickens, and FIRO's customers in turn sold the chickens, and they sold the chickens at what was a loss, and what the court, what the appellate division says in FIRO is, you know, we look at this restored in the impaired property clause. We look at restored and replaced in a common sense way, which is if it was commercially feasible to restore or repair these chickens that got sold, then maybe that impaired property exclusion would operate, and we'll give these people a chance to show that, but there's never been any attempt to say you can somehow restore or repair this kind of thing. Replaced. When you have to. I guess, let me cut right to the chase. I assume the folks overseas needed the molasses, and because the molasses they got were non-conforming, they wanted it replaced with another load of conforming molasses. Is that not the case? They rejected it. They rejected it, so they didn't want it from us. Oh, you sent them a good batch of molasses that they rejected? There's nothing in the record that says that that was what took place. They rejected the molasses, and you. They rejected the bad molasses. We know that. Right, and then you sold the bad molasses at a loss. And that's the damaged property. Damaged in the case. Right. And one of the things that I think that this makes clear is that where the damaged property is certainly, when you talk about where you've got damage, you have this loss of use concept that is included in property damage. And loss of use, when they're talking about the chicken case, is certainly something that the loss of use there is going to be found to be covered, because there was no feasible way for them to repair these chickens, and therefore they got sold as a loss. Why would you use the word repair? They're not going to take the little chickens and turn them into big chickens. It's a replace issue, right? And it's never going to be economically feasible to replace, because the company that made the error, like USA Container slash Passaic River, you're underwater. The deal went bad. You're operating at a loss. So you're never going to want to provide the good molasses after you've provided the bad molasses, but the question is, are you contractually obliged to do so? Why isn't that the test? Because the limitation that was put in, if you say that, it renders the limiting language negatory, because it would encompass all forms of damage. The limiting clause is the limiting clause there. And travelers drafted it. And travelers drafted it. So it's got to be given the narrow... The limiting clause is the word must be? Must be. Must be. Okay. And when... One should be. It says must be. Must be. Right. And that makes it mandatory. That's got to be the only way you can deal with it. But how do we determine mandatory? Is it there's a contractual obligation? Well, it is the only way you can deal with solving the problem. And that's... Then should we have looked or should we be looking to the contract between USA Container and Malooney to see whether there's a provision that says, if you don't provide us with conforming goods, you must replace them with conforming goods, something like that? Well, we know that there's no written contract. There is simply a series of invoices. So there's no contractual provision that would... All right. And that's enough for you to win the case on this exclusion, then, because there's no... There must be. There must, must, must. Your client never agreed to replace, repair, or restore nonconforming goods. That certainly is part of it, but it's just... And I would go say that must means it is really the only way you can deal with it. It is mandatory, not should, could, or something that is optional or possible, because there's any number of possible ways of dealing with this situation. That's not the case. Is that exclusion consistent with the point that the insurer is not to be the guarantor of the insurer's work? Yeah. Essentially what you're asking is that the insurer here be the guarantor of the work? No. I think there's all sorts of situations where your work can result in covered damages. Otherwise, they would simply say, if your work causes any damage of any kind, it's not covered. They could have a policy like that, and maybe... Well, but that's the easy case, because what we learned from Cypress Point is that the very least consequential damages are covered. When your work results in a damage to somebody else, that's always going to be covered. That's not a traveler's position. A traveler's position is, when your work damages your own product, why isn't that a classic case of business risk? And I assume you agree that the business risk exclusion, there are two or three exclusions, I think, in the CGL policy that are known as the business risk exclusions, are they not? I think that that became, in a way, a shorthand for the two exclusions that were in the old policy that the WIDO court addresses. And they're not in the 86 policy? Wait, hold on a minute. They're not in the 86 policy? Isn't the language... The language is different, and the language is really importantly different on that, because there's a subcontractor exception which says if the damage is the product of the subcontractor, this exclusion doesn't apply. So if they hadn't hired Passaic River and USA Container had burned their own molasses, then the business risk exclusion would apply here, but because they hired Passaic River, they're saved by the subcontractor exception to the business risk exclusion? Is that your position? Our position is that when you look at your work, it is the old prior to your work damaging your worker or property. If you go back into WIDO itself, it talks about the goods and services that are supplied by the insured. So WIDO itself talks about the precise and limited damages that are at issue in WIDO, which is... But let's be clear. There is no your work exclusion being proffered here. Exactly. And there is no subcontractor exception. That's not the facts of this case. We have the occurrence, we have property damage, and then we have two proffered exclusions, one of which has to do with a recall, one of which has to do with repair and replace. Which is what it's based on, factually. Now let me ask you a question. What if the directions here had said, and you boil the syrup up to 210 degrees, and they did that, and that happened to ruin the syrup? In other words, the directions were bad. And that to me is a closer case as to whether that was an accident or not. And that to me seems like whether it was properly performed based upon instructions. I'm trying to find the limits of occurrence here, which I think is what Judge Hartman is getting at, that are we saying everything imaginable is covered? Well, it's not that we're saying that everything imaginable was covered. We, again, have to unpack the definitions in the insuring agreement. And once you have that, and, again, that's easy peasy after Cypress Point, which is, look, I have an accident and it causes property damage. And we know that in terms of property damage, property damage in the definition does not distinguish between my property, Joe Jones's property, Al Smith's property. It is all inclusive. It's just got to be tangible property that has changed. So we've got that. Then the question is, we've got to go back to these exclusions, and we've got to give them a narrow reading. All right, we understand that. That's why I play the law. But one last question. Maybe my colleagues have more, but I just have one more. Isn't it true that J6, isn't it fair to call that one of the business risk exclusions, or am I totally off on that? As I look at the language, it says that it excludes coverage for property damage to, quote, that particular part of any property that must be restored, repaired, or replaced because your work was incorrectly performed on it, end quote. Well, it's a problem with what do we mean by business risk exclusions. Well, let me tell you what I understand, and you tell me if I'm off base. My understanding is that when USA Container was hired to perform work, namely getting the molasses and preparing them and shipping them overseas to the customer, that if it did a bad job and didn't fulfill its contractual obligations to do that, that its work in doing that was bad, that it's covered as an occurrence, but it's not covered eventually as an exclusion because it fits within the definition I just read to you in J6. And that's as distinguished from a case where if USA Container slash Passaic River's work was dangerous and they caused a fire and it burned down the property, that would be covered because that's not the business risk that's excluded. That's an accident that no one could foresee, et cetera. I think that when you're talking about your work, your work can hurt other people's property, and when it hurts other people's property, that's covered. It's not excluded, but here we don't have that. It's like the chickens. Right, but here we don't have that. We have the inverse, right? No, no, we're like the chickens, which is Maloney's property is taken, we perform the service on it, we damage the property, and it is sold for less. You have a chicken, the product is applied to the chicken, the chicken is damaged, then we determine whether an exclusion operates here. And, you know, that is, you know, again, we get back to what is an occurrence, and it's... I wish all three of us thought we were beyond the occurrence issue, and you gentlemen keep bringing it up. Do you have any other questions? I have no other questions. Okay, thank you. We understand your position. Let's hear Mr. Bowen's own rebuttal. Thank you, Your Honor. First of all, J6 clearly is one of the business risk exclusions. They're all together in the policy. And it's clear what the import of J6 is, that if you, in performing your work, mess up the product, it's your problem, not ours. All right, but you have to deal with that word must. And why, if we have a purchase order case and we don't have a written contract that obliges the breaching party to restore, repair, or replace, or cover, or some other, you know, similar language, how can you satisfy that must requirement, particularly in light of the black letter law that says exclusions, when ambiguous, are to be construed against the insurance company? Well, I think you look at what was the damage that USA Container had to pay for. The damage was the difference between what Maloney could have gotten for the corn syrup and what they actually got because the product was rejected and they had to recall it. And that's classic damages for rejection of goods. Correct. Okay. But it's all- But the policy language, as you drafted it, doesn't say, or any damages, you know, resulting from the rejection of goods. Well, what are the damages for? The damages are clearly for a breach of contract. They were required by the- As Guido says, you could write a breach of contract exclusion in your policy if you want to, but you don't have one, nor do you have a broad business risk exclusion. You have specific language that under Cypress Point-I meant Cypress Point, not Guido. Under Cypress Point, you looked at a language, don't you? But Cypress Point goes back to Guido, and Guido clearly says that if the damage is limited to your work, it's not covered. And even though Guido relied on exclusions in the 1966 policy, the language that Guido crafted has morphed into, and the court in Cypress Point made a point of relying on the fireman's fund case, which says that the Guido principle goes into whether or not the risk even is covered by the policy. Cypress Point says Guido is irrelevant. See, Travers, Guido is not relevant to the determination whether there's been an occurrence under the terms of the insuring agreement. It's not relevant on that issue. Respectfully, I think that there's a distinction between whether something is an occurrence and whether or not it's something that is even to be covered by the policy. If they made a claim for an automobile accident, we would respond, well, this isn't an auto policy. There's no coverage for it. What you have here is a breach of contract. They have paid the difference. It's not covered by the policy. Guido says that Cypress Point relies upon the cases that stand for that proposition, both in New Jersey and outside of New Jersey. The French case? That might make a lot of sense. I'm just not sure that that's what New Jersey law is telling us to do. But that's why we certified the question, because we're not the New Jersey Supreme Court. We have great respect for that court. We tried to get them to answer the question, but they demurred, and it falls to us. We appreciate counsel's argument. Well, if I could just respond to that, Your Honor, I think that they were answering your question. Well, we have done it. They may have done it in legal aidings, but I think they were. Well, when we certify questions, we often get direct responses, and here we didn't get a direct response. So we will do the best we can. We'll take the matter under advisement. Thank you. All rise. Please stand to be recognized and please stay in your seats.